USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 08/04/06

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

DAMECHA HARRIS,

                            Plaintiff,

            -against-                                                No. 02 Civ. 6481 (LTS) (DCF)

WALTER RUSSETT, Correctional Lieutenant;
QUACKENBUSH, Correctional Lieutenant,

                            Defendants.

LAURA TAYLOR SWAIN, U.S.D.J.


MEMORANDUM OPINION AND ORDER

            Pro se Plaintiff Damecha Harris ("Harris" or "Plaintiff"), a New York State

prisoner, brings this action pursuant to 42 U.S.C. § 1983. Plaintiff asserts that Defendants

Lieutenant Walter Russett ("Russett") and Lieutenant Quackenbush ("Quackenbush")

(collectively, "Defendants") violated his constitutional due process rights when they placed him

in keeplock at the Green Haven Correctional Facility of the New York State Department of

Correctional Services ("Green Haven"). The Court has jurisdiction of this action pursuant to 28

U.S.C. § 1331.

            Defendants move for summary judgment dismissing Plaintiff's Complaint in its

entirety, or in the alternative, for summary judgment on the basis of qualified immunity. Plaintiff

cross-moves for summary judgment. The Court has reviewed and considered carefully all of the

parties' submissions and arguments. For the following reasons, Defendants' motion for summary

judgment dismissing the Complaint is granted and Plaintiff's cross-motion for summary judgment

is denied.

BACKGROUND

The following material facts are undisputed unless otherwise stated. On May 2,

2000, a misbehavior report was written up against Mr. Harris. The misbehavior report charged

Plaintiff with the destruction of a locker within his cell, possession of a weapon, and with

attempting to injure himself with a piece of metal from the locker. (Decl. of Daniel Schulze, Ex.

B ("Ex. B") at D11.) Plaintiff was brought taken to Green Haven's Psychiatric Satellite Unit and

placed in an observation cell. (Decl. of Daniel Schulze, Ex. A - Deposition of Damecha Harris

("Harris Dep.") at 31.) Later that day, Plaintiff became the subject of a second misbehavior

report, when an officer charged him with possession of a weapon, tampering with state property

and self-injury. (Ex. B at D13.) The report stated that Harris was discovered holding a nail and

threatening to cut himself. Id. It was determined that the nail had come from a wall fixture in the

cell. Id. Plaintiff remained in the observation cell until May 4, 2000, when it was determined

that he was not at risk of committing suicide. (Defendants' Rule 56.1 Statement ("Def. 56.1") ¶

4; Harris Dep. at 18-19.) He was transferred to the dormitory section of the mental health unit at

that point. (Def. 56.1 ¶ 4; Harris Dep. at 19.)

Harris remained in the dormitory until May 10, 2000, when a cell became

available in the general population. (Def. 56.1 ¶ 4; Harris Dep. at 18.) At that time, he was

transferred back to the general population and placed under keeplock restrictions.[1] (Def. 56.1 ¶

---

[1]      Mr. Harris contends that his keeplock confinement began on May 5, while he was in the dormitory. (Harris Dep. at 21). However, the indisputable evidence indicates otherwise. He was housed in the dormitory section of the Psychiatric Satellite Unit until May 10, and the evidence, including Plaintiff's deposition testimony, demonstrates that, while in the dormitory, Plaintiff was not subjected to keeplock restrictions. (Harris Dep. at 21; Decl. of Daniel Schulze, Exhibit C-Decl. Of John Culkin ("Culkin Decl.") ¶ 4). In keeplock, an inmate is confined to his cell for

6.) The restrictions that Harris mentions in association with his keeplock confinement include limits of one hour of recreation per day, three showers per week, one visit per week, and denial of personal property, telephone, commissary and personal food privileges. (Harris Dep. at 22; Pl.'s Aff. in Resp. at ¶21.) That same day, Plaintiff received misbehavior reports for both of the incidents that had occurred on May 2. (Def. 56.1 ¶¶ 6-7; Ex. B at D11, D13; Harris Dep. at 20.) Five days later, on May 15, 2000, a hearing was conducted concerning the first incident charged. (Def. 56.1 ¶ 8; Harris Dep. at 19.) Harris was offered assistance with his hearing (Ex. B at D28) as well as opportunities to call witnesses and introduce evidence. He did not avail himself of these offerings. (Def. 56.1 ¶ 9; Harris Dep. at 25-26.) After the hearing, Plaintiff was found guilty on both of the charges relating to the first incident (destruction of property and self-infliction of bodily harm) and was sentenced to 180 days in keeplock confinement. (Def. 56.1 ¶ 9; Ex. B at D21-23.) Plaintiff was provided with a copy of the hearing disposition. (Ex. B at D23.)

On May 22, 2000, a hearing was held regarding the second set of charges. (Def. 56.1 ¶ 11; Ex. B at D14-15.) Plaintiff was afforded all of the same opportunities as at the first hearing and, while he did choose to receive assistance for the hearing, he did not elect to call any witnesses or introduce any evidence. (Def. 56.1 ¶¶12-13; Ex. B at D65-71, D53-56; Harris Dep. at 24-26.) Plaintiff was found guilty of two of the charges, and he was sentenced to an additional 90 days of keeplock confinement with 60 days suspended. (Def. 56.1 ¶ 14.)

Plaintiff appealed his confinement to the Director of Special Housing, Donald

---

twenty-three hours per day. In the dormitory an inmate is permitted to interact with the other inmates, watch television and watch movies. (Harris Dep. at 21; Culkin Decl. ¶ 4).

Selsky. (Def. 56.1 ¶ 15; Ex. B at D3-10.) The first hearing decision was reversed on the grounds

that the superintendent conducting the hearing had not properly considered Plaintiff's mental

health status. (Def. 56.1 ¶ 15; Ex. B at D1-2.) The second hearing decision was also overturned

on appeal on the same grounds. (Def. 56.1 ¶ 15; Ex. B at D32-33). The second reversal was

made on September 18, 2000, and Plaintiff was released from keeplock confinement on that same

day. (Def. 56.1 ¶ 15; Ex. B at D32-33; Harris Dep. at 32) Plaintiff had spent a total of

approximately 141 days in keeplock by that date.


## DISCUSSION

*Summary Judgment Standard*

Summary judgment is appropriately granted when the "pleadings, depositions,

answers to interrogatories, and admissions on file, together with the affidavits, if any, show that

there is no genuine issue as to any material fact and that the moving party is entitled to a

judgment as a matter of law." Fed. R. Civ. P. 56(c). A fact is material to a ruling on summary

judgment "if it 'might affect the outcome of the suit under the governing law,'" and "[a]n issue of

fact is 'genuine' if 'the evidence is such that a reasonable jury could return a verdict for the

nonmoving party.'" Holtz v. Rockefeller & Co., 258 F.3d 62, 69 (2d Cir. 2001) (quoting

Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). Evidence must be construed in the

light most favorable to the non-moving party, Holtz, 258 F.3d at 69, and, when considering a

claim brought by a pro se plaintiff, the Court must read the pleadings "liberally and interpret

them to raise the strongest arguments that they suggest." Jorgensen v. Epic/Sony Records, 351

F.3d 46, 50 (2d Cir. 2003) (quoting McPherson v. Coombe, 174 F.3d 276, 280 (2d Cir. 1999))

(citation and internal quotation marks omitted in original). Still, a pro se plaintiff does have the

"duty to meet the requirements necessary to defeat a motion for summary judgment." Jorgensen,

351 F.3d at 50 (quoting Jorgensen v. Epic/Sony Records, No. 00 CIV. 9181 (JFK), 2002 WL

31119377 at *2 (September 24, 2002 S.D.N.Y.) (vacated in part by Jorgensen v. Epic/Sony

Records, 351 F.3d 46 (2d Cir. 2003)). A plaintiff opposing summary judgment "has the burden

of providing similar support setting forth specific facts about which a genuine triable issue

remains." Borthwick v. First Georgetown Securities, Inc., 892 F.2d 178, 181 (2d Cir. 1989).

Thus, conclusory statements do not provide a sufficient basis for a non-moving party to resist

summary judgment. Cifarelli v. Vill. of Babylon, 93 F.3d 47, 51 (2d Cir. 1996).


*Due Process*

   In order to prove a violation of due process, a plaintiff must demonstrate "(1) that

he possessed a liberty interest and (2) that the defendant(s) deprived him of that interest as a

result of insufficient process." Giano v. Selsky, 238 F.3d 223, 225 (2d Cir. 2001) (quoting Giano

v. Selsky, 37 F. Supp. 2d 162, 167 (N.D.N.Y. 1999)). A liberty interest is implicated by the

imposition of prison discipline when (1) such discipline "imposes atypical and significant

hardship on the inmate in relation to the ordinary incidents of prison life," Sandin v. Conner, 515

U.S. 472, 484 (1995), and (2) "the state has granted its inmates, by regulation or by statute, a

protected liberty interest in remaining free from that confinement or restraint." Arce v. Walker,

139 F.3d 329, 334 (2d Cir. 1998).

   To determine whether a disciplinary method imposes an "atypical and significant

hardship," a court must consider "'the extent to which the conditions of the disciplinary

segregation differ from other routine prison conditions' and 'the duration of the disciplinary

segregation imposed compared to discretionary confinement.'" Palmer v. Richards, 364 F.3d 60,

64 (2d Cir. 2004) (quoting Wright v. Coughlin, 132 F.3d 133, 136 (2d Cir. 1998)). "Both the

conditions and their duration must be considered, since especially harsh conditions endured for a

brief interval and somewhat harsh conditions endured for a prolonged interval might both be

atypical." Sealey v. Giltner, 197 F.3d 578, 586 (internal citation omitted).

The Second Circuit has held that "normal" keeplock-type conditions (including

23-hour per day confinement in a special housing unit, limitation to three showers per week and

loss of privileges), even if imposed for a period of up to 101 days, do not constitute "atypical"

conditions of confinement potentially implicating a liberty interest. Id. at 589. See also Palmer

v. Richards, 364 F.3d at 65. A period of confinement between 101 and 305 days is considered to

be an "intermediate duration," and could implicate a liberty interest should a detailed record of

the conditions of confinement indicate that it was an atypical and significant hardship. Id.

In the instant case, two misbehavior reports were written regarding Plaintiff's

conduct on May 2, 2000, and he was moved into the Psychiatric Satellite Unit that same day. In

relation to the misbehavior reports, Plaintiff was placed in keeplock confinement on May 10,[2] and

he received copies of the misbehavior reports that same day. The hearing for the first charge was

held on May 15, and the hearing for the second charge was held on May 22. Thus, he was in

keeplock confinement for five days before having a hearing. Plaintiff asserts that the delay

---

[2]       The days Plaintiff spent in the Psychiatric Satellite Unit dormitory are not
considered as part of the duration of keeplock because the facts of record, including
Harris' own testimony, indicate that Plaintiff was not subject to the restrictions of
keeplock confinement at that point. He was permitted to watch television and
interact with the other inmates. See supra note 1.

between the writing of the misbehavior reports and receipt of them upon his placement in keeplock, and the delay between his receipt of the misbehavior reports and the hearings on his charges, amounted to violations of due process.

Plaintiff's claim as to the delay between the writing and the delivery of the misbehavior reports fails because he suffered no deprivation of liberty on account of the reports prior to the date on which they were given to him. Plaintiff's due process claims concerning the delay between the commencement of keeplock and the first disciplinary hearing also fails because Plaintiff was confined to keeplock on account of the charges for only five days – well short of the 101-day threshold for atypicality – pending his first hearing. Furthermore, no New York State statute or regulation grants inmates a protected liberty interest in avoiding such a period of confinement prior to the provision of procedural due process. The relevant New York State regulation provides that:

> Where an inmate is confined pending a disciplinary hearing or superintendent's hearing, the hearing must be commenced as soon as is reasonably practicable following the inmate's initial confinement . . . but, in no event may it be commenced beyond seven days of said confinement without authorization of the commissioner or his designee."

7 N.Y.C.R.R. section 251-5-1(a). It further provides that "the disciplinary hearing or superintendent's hearing must be completed within 14 days following the writing of the misbehavior report unless otherwise authorized by the commissioner or his designee." Id. at (b). Since Plaintiff's first hearing was held within 13 days of the writing of the misbehavior report and within five days of his placement in keeplock, his confinement fell within the regulatory parameters.

Finally, although there appears to have been technical noncompliance with the

regulation in that the period between the preparation of the second misbehavior report (May 2) and the hearing on that set of charges (May 22) exceeded 14 days, no due process claim is made out because Plaintiff suffered no deprivation of a liberty interest on account of those charges in the interim. To the extent he was confined beyond the 14 day period, it was on account of the May 15, 2000 adjudication of the first set of charges.[3]

On this record, therefore, even when viewed in the light most favorable to the Plaintiff, no reasonable fact-finder could find that Plaintiff was denied due process in connection with a deprivation of a liberty interest. Accordingly, Defendants are entitled as a matter of law to summary judgment dismissing Plaintiff's Complaint. For substantially the same reasons, Plaintiff's cross-motion for summary judgment is denied. In light of the Court's determination on the due process issue, it need not address the question of qualified immunity

CONCLUSION

For the foregoing reasons, Defendant's motion for summary judgment dismissing Plaintiff's complaint is granted, and Plaintiff's cross-motion for summary judgment is denied.

---

[3]    Not only was the pre-hearing period of confinement brief (five days), there is no evidence that the conditions of confinement were atypical. In fact, Plaintiff's deposition testimony acknowledges that the conditions were typical of keeplock. Plaintiff had previous been placed in keeplock on at least one unrelated occasion and acknowledges that the conditions of this period of confinement were essentially the same. (Harris Dep. at 23.) A brief period of confinement to keeplock under "normal" conditions does not constitute an atypical and significant hardship. See Palmer, 364 F.3d at 65 (noting that confinement to keeplock for less than 101 days will not implicate a liberty interest under normal conditions); Sealey, 197 F.3d at 589 (finding that a 101-day period of confinement to a Special Housing Unit (SHU) is not an atypical and significant hardship); Frazier v. Coughlin, 81 F.3d 313, 317 (2d Cir. 1996) (holding that a twelve-day period of pre-hearing confinement was not a deprivation of a liberty interest).

The Clerk of Court is respectfully requested to enter judgment in Defendants' favor and close this case. The Court also certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith. See Coppedge v. United States, 369 U.S. 438, 444 (1962).

SO ORDERED.

Dated: New York, New York
August 4, 2006

Copies mailed 8/4/06 to counsel rms
Chambers of Judge Swain

LAURA TAYLOR SWAIN
United States District Judge